THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* GIUSSEPPE GAMBARO, Appellant.

(Argued May 16, 1910; decided June 7, 1910.)

APPEAL from a judgment of the Supreme Court, rendered May 24, 1909, at a Trial Term for the county of New York upon a verdict convicting the defendant of the crime of murder in the first degree.

*Lorenzo Ullo* for appellant.

*Charles S. Whitman, District Attorney (Robert C. Taylor* of counsel), for respondent.

WERNER, J.   The defendant, Guiseppe Gambaro, has been convicted of the crime of murder in the first degree under an indictment specifying that on the 5th day of February, 1909, he shot and killed his brother, Vincent Gambaro, in the city and county of New York.   The case is so simple, clear and conclusive that nothing but the solemnity of the issue would justify even the briefest discussion.   As it is, we shall confine ourselves to a short statement of the tragedy, together with a few incidental facts which are connected with it.

The defendant is the eldest of four brothers, and, at the time of the homicide, was about forty-five years old.   His victim was about twenty-seven years of age, and for some time prior to his death he had been foreman in the works of the " Bent Glass Company," a copartnership doing business under a registered name at 79 Walker street, in New York

city. The defendant had also been employed there as a designer, but had left about fifteen days prior to the shooting. During the interval between the defendant's leaving his employment and the occurrence of the homicide the defendant and the deceased had several conversations about money matters, in the course of which the former stated that he was out of money, out of work, and indebted for rent, and asked the latter if he could not get back his old place as designer. The deceased told him, in substance, that he would have to wait now until there should be a vacancy. Then the defendant asked the deceased for some money, but the record does not disclose what came of this request, except as subsequent admissions attributed to the defendant indicate that the request was granted. On the day of the homicide, at about eleven o'clock in the forenoon, the defendant went to the works of the Bent Glass Novelty Company, and showed to his brother Frank, who was also employed there, a newspaper containing an advertisement for the sale of a farm in West Virginia for $200, and stated that if Vincent, the deceased, would give him the money, he could start right on and go over there and establish his family. The defendant added that he was going to ask Vincent for the money, and the witness, Frank, told him that Vincent had no money to give him. The defendant replied, "I will try anyway," and went to an upper floor to look for Vincent. After the lapse of about half an hour the defendant returned to his brother Frank and reported that Vincent had refused to give him money and, with a gesture of the hand indicating anger, he said "he would do something." Frank advised the defendant to be calm and not to get excited, to which the defendant replied "all right" and went out. The defendant again appeared at the factory at about half-past four o'clock in the afternoon, walked past his brother Frank up to the last work bench and stood there. At this juncture Vincent, the deceased, came down from the upper floor and walked toward the office. As he approached the work bench where the defendant stood, the latter accosted the deceased and said, "Come here I want to show you something." As Vincent came nearer, and when he was within about two feet of the defendant, the latter drew a revolver, pointed it at Vincent

and fired. Vincent fled toward the office and as he ran the defendant fired a second shot. Vincent continued his flight and managed to get through or over the gate which separated the office from the factory, when he fell down, and while he was prone upon the floor the defendant, who had then also reached the office gate, discharged another shot into Vincent's body. The defendant then fired the two cartridges which remained in the five-chamber revolver, but they went wild and lodged in the walls of the office. The other occurrences which accompanied and followed the shooting can be summarized in a few words. The defendant was seized, his revolver was taken from him, he was detained until the arrival of a police officer who took him into custody and asked him why he shot his brother, to which he answered, " I will tell the jury." Meanwhile an ambulance had been called, and the deceased, still alive, was removed to a hospital where he was cared for and treated. He lingered until after seven o'clock of that evening when he died. The autopsy disclosed three gunshot wounds, one of which was in the left elbow, another was in the right shoulder, and a third penetrated the lower chest cavity entering at the eighth dorsal vertebrae on the right side and piercing the root of the right lung. The two shots last mentioned entered the back of the victim, demonstrating that his assailant was behind him when he fired, and the shot which penetrated the chest cavity and lacerated the right lung was clearly the cause of death. The narration of the shooting giving by the defendant's brother Frank was corroborated, with but slight variation in detail, by eight witnesses who were in the factory at the time of its occurrence.

The defendant did not take the stand and called no witnesses. At the conclusion of the case for the prosecution his counsel stated that, in his view, it was plainly the duty of the court to submit the case to the jury, but moved that the court take from the jury the question of murder in the first degree, upon the ground that there was a lack of proof of premeditation and deliberation. This motion was denied, whereupon the case was submitted to the jury in a charge so clear and satisfactory that not an exception was taken to it.

33

The jury found the defendant guilty of murder in the first degree, and a careful examination of the record compels the conclusion that the verdict was the only one that could have been honestly rendered in the circumstances. There are no exceptions in the case which need to be discussed, and the only suggestion of irregularity in the trial is that the evidence of Oliver C. Brown, one of the employers of the deceased, relating a conversation between him and the deceased in the the absence of the defendant was incompetent and prejudicial. The most cursory glance at the record discloses the error of this contention. That evidence was brought out by the counsel for the defendant. But, even conceding its incompetency, it was also immaterial, for it related to an application by Vincent to the police authorities for leave to carry a revolver, and the circumstance was in no wise connected with the shooting which resulted in his death.

Nothing further need be said about the real record on appeal. Defendant's present counsel, who was called into the case after the trial and conviction, now asks us to consider a supplemental return consisting of affidavits which set forth averments of facts and circumstances referred to as newly-discovered evidence, and upon which a motion for a new trial was made and denied. We have examined these affidavits carefully and have no hesitation in deciding that, conceding all they contain, they are not sufficient to warrant the granting of a new trial. The whole case can be fitly characterized in a sentence. The defendant, smarting under a real or fancied wrong, undertook to be his own avenger and committed a murder which is surrounded by unmistakable elements of deliberation and premeditation and is without a single palliating circumstance.

The judgment of conviction should be affirmed.

CULLEN, Ch. J., GRAY, VANN, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur.

Judgment of conviction affirmed.